UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS – WESTERN SECTION

CIVIL ACTION NO.

| | |
|---|---|
| HERMAN PAUL CUMBY,<br>Plaintiff,<br><br>v.<br><br>AMERICAN MEDICAL RESPONSE, INC.,<br>AMERICAN MEDICAL RESPONSE<br>OF MASSACHUSETTS, INC., EDWARD<br>VAN HORNE, DAVID L. PELLETIER,<br>JOHN DOE and JANE DOE<br>EMERGENCY MEDICAL TECHNICIANS,<br>Defendants. | COMPLAINT AND DEMAND<br>FOR JURY TRIAL |

## JURISDICTION

1. The action is brought pursuant to 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments of the United States Constitution, Massachusetts Tort Claim Act, M.G. L. c. 258M, M.G.L. c. 12 Section 111 (Massachusetts Civil Rights Act), and pursuant to the common and statutory laws of torts Title 28 U.S.C. § 1331 and 1343 which provide federal question and diversity jurisdiction over all federal claims, 28 U.S.C. § 1332 and 28 U.S.C. § 1367 which provide diversity jurisdiction for parties of different states, and supplemental jurisdiction over state law claims. The Plaintiff invokes the pendent jurisdiction of the Court to hear and to decide his claims under state law.

## PARTIES

1

2. The Plaintiff, Herman Paul Cumby, is an African-American man who at all pertinent times resides in Hampden County, Massachusetts.

3. The Defendant, American Medical Response (hereinafter "AMR"), is a corporation organized under the laws of Delaware with a principal business address at 6200 South Syracuse Way, Suite 200, Greenwood Village, Colorado.

4. The Defendant, American Medical Response of Massachusetts (hereinafter "AMR MA"), is a corporation organized under the laws of Massachusetts with a principal business address at 6200 South Syracuse Way, Suite 200, Greenwood Village, Colorado, and a local business address at 595 Cottage Street, No. 1, Springfield, Hampden County, Massachusetts.

5. The Defendant, Edward Van Horne ("Van Horne"), is an individual who resides in Colorado.

6. At all times relevant hereto, Van Horne was the president of AMR.

7. At all times relevant hereto, Van Horne was the president of AMR MA.

8. The Defendant, David Pelletier ("Pelletier"), is an individual who resides in Hampden County, Massachusetts.

9. At all times relevant hereto, Pelletier was the general manager of AMR MA.

10. The Defendant, John Doe ("John Doe"), is an individual of unknown residence.

11. At all times relevant hereto, John Doe was acting as a paramedic employed by AMR MA.

12. The Defendant, Jane Doe ("Jane Doe"), is an individual of unknown residence.

13. At all times relevant hereto, Jane Doe was acting as a paramedic employed by AMR MA.

## NATURE OF ACTION

14. Through this action, Plaintiff Herman Paul Cumby (hereinafter, the "Plaintiff") seeks damages for personal and emotional injuries suffered as a result of the negligent and discriminatory conduct of John Doe, Jane Doe, AMR, AMR MA, Van Horne, Pelletier, their employees and agents in failing to provide the appropriate standard of care that would have promptly assisted the Plaintiff with his acute injuries on April 8, 2015, under the Massachusetts Tort Claim Act, M.G.L, c. 258 § 4, Massachusetts Civil Rights Act, M.G. L. c. 12. §11I and under 42 United States Code, § 1983.

## FACTS

15. At all times relevant hereto, AMR owned and operated a for-profit emergency response company with a corporate address at 6200 South Syracuse Way, Suite 200, Greenwood Village, Colorado.

16. At all times relevant hereto, AMR had a corporate branch company operating a for-profit emergency ambulance service AMR MA with a corporate address at 6200 South Syracuse Way, Suite 200, Greenwood Village, Colorado, and a local address at 595 Cottage Street, No. 1, Springfield, Hampden County, Massachusetts.

17. At all times relevant hereto, AMR MA held the contract for ambulance service response for the emergency "9-1-1" system for the City of Springfield.

18. At all times relevant hereto, AMR MA, through the acts of its employees and agents, provided emergency medical response, treatment, and transportation to patients in Springfield who required emergency medical assistance.

19. At all relevant times, AMR MA and, or AMR, were the sole providers of emergency medical ambulatory services for the City of Springfield, MA.

20. On April 7, 2015 at approximately 11:00 p.m., the Plaintiff was a patron at Nathan Bill's EFP Bar and Restaurant ("Nathan Bill's") at 110 Island Pond Road in Springfield, along with his cousins Jozelle Ligon and Jackie Ligon, and their friend Michael Cintron ("Cintron").

21. The Plaintiff, his group's designated driver, had parked his car in the Nathan Bill's parking lot directly in front of the bar. The Plaintiff consumed approximately two (2) drinks throughout the night, and was socializing with his party without incident.

22. Also consuming alcohol at Nathan Bill's that evening was a group of off-duty Springfield police officers, including but not limited to Daniel Billingsley ("Billingsley"), Melissa Rodriguez, Anthony Cicero, Christian Cicero, and Igor Basovskiy.

23. At approximately 1:00 a.m. (now April 8, 2015), Jozelle Ligon whistled to the bartender to get her attention. Billingsley took offense, interpreting the whistle as a catcall to Officer Melissa Rodriguez, who was his girlfriend at the time.

24. Billingsley became aggressive towards Jozelle Ligon, and Jozelle Ligon left the bar. Billingsley and two other off-duty officers followed him outside.

25. John Sullivan (one of Nathan Bill's owners and bar manager), the Plaintiff and Cintron then also went outside. When Billingsley rejected efforts to peacefully solve the conflict, the Plaintiff and his group decided to leave the bar.

26. The Plaintiff and his party left the bar on foot, walking to a nearby Rocky's Hardware store. There, they split up, and the Plaintiff (believing his cousins and Cintron would walk home), proceeded to walk down Allen Street, speaking to his girlfriend on his cell phone.

27. Right before 2:00 a.m., the Plaintiff walked back towards Nathan's Bill to retrieve his car to go home. As the Plaintiff approached the Rocky's Hardware Store parking lot, he observed his cousins and Cintron near Murphy's Pop Shop.

28. Further off in the distance, Plaintiff recognized the same group of off-duty Springfield police officers, who were now joined by a pack of approximately ten (10) other individuals, approaching his cousins and Cintron.

29. As the Plaintiff got close to his cousins by Murphy's Pop Shop, he heard a loud whistle followed by Billingsley saying "What's up now?"

30. Billingsley then closed in on the Plaintiff and his cousins, and physically pushed Jozelle Ligon. The Plaintiff went over to diffuse the conflict, saying to Billingsley "What are you doing this for? We didn't come for this."

31. When the Plaintiff turned his back to the Billingsley and his group, he was suddenly struck from behind with an object and with such force as to knock him unconscious.

32. Springfield on-duty police officers began arriving at 2:04 a.m., and AMR MA was called by the Springfield Police dispatcher at 2:06 a.m., to assist a "man down on the ground."

33. AMR MA first entered the Nathan Bill's parking lot at 2:11:27 a.m., where a large majority of the Springfield Police had gathered, and then exited the parking lot at 2:12:27 a.m. and left the vicinity, without attending to the Plaintiff who was lying on the ground unconscious.

34. After some delay, AMR MA eventually returned to the vicinity, and parked near the Plaintiff but still did not render aid.

35. The Plaintiff, upon regaining consciousness, was lying on the pavement, and he tried to sit up. He could then see, about thirty (30) feet away, a Springfield police cruiser parked next to an AMR MA ambulance, with uniformed police officers – Darren Nguyen and Shavonne Lewis – talking with E.M.T.'s.

36. The plaintiff could also see some of the off-duty police officers who had attacked him earlier, walking back to Nathan Bill's.

37. The E.M.T.'s did not approach the Plaintiff to assist him off the ground.

38. Instead, Cintron approached the Plaintiff and tried to lift him to a standing position. The Plaintiff instantly realized his leg was injured because it could not bear his weight, and the pain was so severe that it was nauseating.

39. The E.M.T.'s still did not approach the Plaintiff to render aid.

40. Instead, Cintron physically assisted the Plaintiff in getting over to John Doe E.M.T., who then asked the Plaintiff, "Do you need medical assistance?" The Plaintiff, still reeling from his head injury, responded, "I don't know."

41. John Doe then said, "You look like crap," to which the Plaintiff replied, "I don't know what I look like, I just got off the ground."

42. The Plaintiff had a bloody lip and mouth, with blood visibly running down his head and face. The Plaintiff explained to John Doe that he had been jumped and beaten by approximately ten to fifteen men, and that one assailant had struck him on the head and knocked unconcsious.

43. John Doe briefly looked at the Plaintiff's head wounds, but did not enquire of the Plaintiff how long he had been unconscious, whether his head was hurting, whether he felt dizzy, or whether his ears were ringing.

44. John Doe did not screen the Plaintiff for a concussion or perform any neurological tests to assess his head injury (i.e., check pupils, check vital signs, ask him about medications he may be taking).

45. John Doe did not make notes, drawings, or photographs of the Plaintiff's head injuries to aid in the diagnosis or investigation of the etiology of the injury.

46. Next, John Doe, without removing the Plaintiff's shoe, rotated the Plaintiff's foot side to side. The Plaintiff winced and told him, "It hurts like hell."

47. John Doe asked the Plaintiff if he could wiggle his toes, to which he answered in the affirmative and John Doe then told him, "I think you sprained your ankle."

48. John Doe did not enquire whether the Plaintiff's ankle or leg could bear weight, or whether the Plaintiff could walk unaided.

49. John Doe did not splint the Plaintiff's leg or ankle.

50. John Doe did not offer the Plaintiff ice for his injuries.

51. The Plaintiff told John Doe that his front teeth felt loose, but John Doe did not check his teeth nor instruct him to obtain immediate medical treatment to save his teeth.

52. Instead, John Doe told the Plaintiff, "You should be fine."

53. John Doe then asked the Plaintiff if he wanted to go to the hospital, but discouraged him saying, "An ambulance trip would be expensive."

54. There had been no discussion between the Plaintiff and John Doe about the Plaintiff's financial situation, or whether the Plaintiff had health insurance.

55. The Plaintiff, looking for professional guidance, then asked John Doe what his advice as to whether or not he should go to the hospital. John Doe responded, "I think you had too much to drink and should go home and sleep it off."

56. John Doe not only failed to transport the Plaintiff to the hospital for emergency medical treatment, he discouraged him from seeking emergency medical treatment.

57. John Doe did not educate the Plaintiff about the risks involved should he not go by ambulance to the hospital for emergency treatment.

58. John Doe did not educate the Plaintiff on how to treat his injuries at home, or how to avoid exacerbating them.

59. The Defendants, John Doe and Jane Doe breached their duty when they failed to keep standard medical records or suppressed medical records of their interactions with the Plaintiff on April 8, 2015.

60. Based on the negligent medical advice and opinions of AMR MA's employees and/or agents John Doe and Jane Doe, the Plaintiff then drove his car alone to a cousin's house without receiving critical, time-sensitive medical attention.

61. Based on the negligent medical advice and opinions of AMR MA's employees and/or agents John Doe and Jane Doe, the Plaintiff did not receive timely, critical medical care.

62. Based on the negligent medical advice and opinions of AMR MA's employees and/or agents John Doe and Jane Doe, the Plaintiff drove and walked around on his broken leg and severely dislocated ankle, attempted to sleep with a concussion, and did not get treatment in time to save his obviously loosened front teeth.

63. At his cousin's home, the Plaintiff continued to follow the negligent medical advice of AMR MA's employees and/or agents John Doe and Jane Doe by attempting to sleep. As a result, the Plaintiff, dizzy and nauseated from severe pain from his

concussion, broken leg, mangled ankle, and loosened front teeth, vomited and fainted twice.

64. Eventually, the Plaintiff did go to the emergency room at Baystate Medical Center later during the business day, where he was treated with morphine for pain and diagnosed with "assault with head injury, loose teeth with impaction fracture and complex fibular fracture with severe ankle sprain."

65. As a direct and proximate cause of the defendant AMR MA's employees and/or agents John Doe and Jane Doe's negligence, the Plaintiff suffered complications from his severe injuries which included: a concussion; a broken leg; a severely dislocated ankle with significant ligamentous and cartilage injury (requiring surgery and insertion of a metal plate and screws); loss of four upper front teeth; P.T.S.D.; emotional distress; loss of employment; lost wages;  and permanent impairment of his future earning capacity.

## **CLAIMS**

### COUNT I

#### v.  John Doe and Jane Doe for Negligence

66. The Plaintiff repeats, realleges and incorporates herein each allegation set forth in the paragraphs above.

67. The Defendants, John Doe and Jane Doe, owed a duty to the Plaintiff to provide the appropriate standard of emergency care that would promptly assist him with his acute injuries.

68. The Defendants, John Doe and Jane Doe, breached these duties when they provided sub-standard emergency treatment to the Plaintiff on April 8, 2015, including, but not

limited to: failing to enquire of the Plaintiff how long he had been unconscious or screen or treat for a concussion or head injury; failing to check or treat his loose teeth; failing to reasonably examine or assess or stabilize his acute injuries to his ankle or leg (instead, likely aggravating the injury by rotating his dislocating ankle), and, finally, failing to keep an appropriate medical record.

69. As a direct and proximate result of John Doe and Jane Doe's negligence, the Plaintiff suffered serious harm including, but not limited to: complications from his severe injuries which included a concussion, a broken leg, a severely dislocated ankle with significant ligamentous and cartilage injury (requiring surgery and insertion of a metal plate and screws), loss of four upper front teeth, P.T.S.D., loss of employment, lost wages, and permanent impairment of his future earning capacity.

## Count II

### v. John Doe and Jane Doe
### for Negligent Infliction of Emotional Distress

70. The Plaintiff repeats, realleges and incorporates herein each allegation set forth in the paragraphs above.

71. The Defendants, John Doe and Jane Doe, owed a duty to the Plaintiff to provide the appropriate standard of emergency care, medical transport, and medical record keeping that would promptly stabilize and treat his acute injuries, the denial of which would foreseeably cause him emotional distress.

72. The Defendants, John Doe and Jane Doe, breached these duties to the Plaintiff when they provided him sub-standard emergency treatment on April 8, 2015; in particular, where they were the sole providers of the "9-1-1" service for the City of Springfield

and, thus, the Plaintiff's only access to emergency treatment, the denial of which would foreseeably cause emotional distress injury to the Plaintiff.

73. As a direct and proximate result of John Doe and Jane Doe's negligence, the Plaintiff suffered serious emotional distress.

Count III

v. John Doe and Jane Doe
for Intentional Infliction of Emotional Distress

74. The Plaintiff repeats, realleges and incorporates herein each allegation set forth in the paragraphs above.

75. The Defendants, John Doe and Jane Doe, owed a duty to the Plaintiff to provide the appropriate standard of emergency care, medical transport, and medical record keeping that would promptly stabilize and treat his acute injuries, and to refrain from intentionally inflicting emotional distress.

76. The Defendants, John Doe and Jane Doe, breached these duties to the Plaintiff when they failed to provide standard emergency treatment on April 8, 2015, and alleged, without basis, that he could not afford medical transport to a hospital, instead asserting, without medical basis, that he was intoxicated, and should drive home alone to "sleep it off."

77. The conduct of the Defendants, John Doe and Jane Doe, constituted intentional infliction of emotional distress.

78. By their actions and omissions, the Defendants, John Doe and Jane Doe, subjected the Plaintiff to reprehensible conduct knowingly, intentionally, willfully, purposely, maliciously and with such reckless disregard of the consequences as to display a conscious indifference to the danger of harm and injury.

79. As a direct result of the intentional conduct of the Defendants, John Doe and Jane Doe, in this count, The Plaintiff suffered severe emotional distress and great pain of body and mind.

Count IV

v. AMR, AMR MA, Van Horne, Pelletier, their Employees and Agents
for Negligence

80. The Plaintiff repeats, realleges and incorporates herein each allegation set forth in the paragraphs above.

81. The Defendants, AMR, AMR MA, Van Horne, Pelletier, their employees and agents owed a duty to the Plaintiff to properly hire, train, and supervise its employees and agents to provide the appropriate standard of care that would have promptly assisted the Plaintiff with his acute injuries.

82. The Defendants, AMR, AMR MA, Van Horne, Pelletier, their employees and agents, breached these duties when they failed to hire, train, and supervise John Doe and Jane Doe to adequately assist the Plaintiff with his acute injuries.

83. As a direct and proximate result of the negligence of AMR, AMR MA, Van Horne, Pelletier, their employees and agents, the Plaintiff suffered serious harm including but not limited to: complications from his severe injuries which included a concussion, a broken leg, a severely dislocated ankle with significant ligamentous and cartilage injury (requiring surgery and insertion of a metal plate and screws), loss of four upper front teeth, P.T.S.D., loss of employment, lost wages, and permanent impairment of his future earning capacity.

Count V

v. AMR, AMR MA, Van Horne, Pelletier, their Employees and Agents
for Negligent Infliction of Emotional Distress

84. The Plaintiff repeats, realleges and incorporates herein each allegation set forth in the paragraphs above.

85. The Defendants, AMR, AMR MA, Van Horne, Pelletier, their employees and agents, owed a duty to the Plaintiff to properly hire, train, and supervise its employees and agents to provide the appropriate standard of emergency care and medical transport that would promptly stabilize and treat the Plaintiff's acute injuries, the denial of which would foreseeably cause the Plaintiff emotional distress.

86. The Defendants, AMR, AMR MA, Van Horne, Pelletier, their employees and agents, breached these duties when they failed properly hire, train, and supervise its employees and agents to provide the appropriate standard of emergency care and, in particular, where they were the sole providers of the "9-1-1" service for the City of Springfield on April 5, 2015, and, thus, the Plaintiff's only access to emergency medical treatment, the denial of which would foreseeably cause him emotional distress.

87. As a direct and proximate result of AMR, AMR MA, Van Horne, Pelletier, their employees and agents' negligence, the Plaintiff suffered serious emotional distress.

Count VI

v. AMR, AMR MA,  Van Horne, Pelletier, their Employees and Agents
for Intentional Infliction of Emotional Distress

88. The Plaintiff repeats, realleges and incorporates herein each allegation set forth in the paragraphs above.

89. The Defendants, AMR, AMR MA, Van Horne, Pelletier, their employees and agents, owed a duty to the Plaintiff to hire, train, and supervise its employees and agents to provide the appropriate standard of emergency care and medical transport that would promptly stabilize and treat his acute injuries and to refrain from intentionally inflicting emotional distress.

90. The Defendants, AMR, AMR MA, Van Horne, Pelletier, their employees and agents, breached these duties to the Plaintiff when they failed to hire, train, and supervise its employees and agents to provide the appropriate standard of emergency care and medical transport that would promptly stabilize and treat his acute injuries and to refrain from intentionally inflicting emotional distress where on April 8, 2015, they alleged without basis, that he could not afford medical transport to a hospital, instead asserting, without medical basis, that he was intoxicated and should drive home alone and "sleep it off."

91. The conduct of the Defendants, AMR, AMR MA, Van Horne, Pelletier, their employees and agents, constituted intentional infliction of emotional distress.

92. By their actions and omissions, the Defendants, AMR, AMR MA, Van Horne, Pelletier, their employees and agents, subjected the Plaintiff to reprehensible conduct knowingly, intentionally, willfully, purposely, maliciously and with such reckless disregard of the consequences as to display a conscious indifference to the danger of harm and injury.

93. As a direct result of the intentional conduct of the Defendants, AMR, AMR MA, Van Horne, Pelletier, their employees and agents, in this count, The Plaintiff suffered severe emotional distress and great pain of body and mind.

Count VII

v. John Doe and Jane Doe for Violation of the Plaintiff's
Civil Rights, pursuant to 42 U.S. Code § 1983

94. In responding to the "man down" emergency call on April 8, 2015, where the Plaintiff required emergency medical response in Springfield, MA, the Defendants, John Doe and Jane Doe, were acting under color of state action because AMR MA had the sole contract to provide emergency medical response for the public "9-1-1" emergency response system for the City of Springfield, and because of their collaboration and collusion with the Springfield Police Department on the scene.

95. The Defendants, John and Jane Doe, took orders from the Springfield Police Department and delayed treatment to the Plaintiff, thus solidifying their collusion and aligning themselves with the Springfield Police Department in furtherance of violating the Plaintiff's civil rights.

96. The Defendants, John Doe and Jane Doe, owed a duty to the Plaintiff to provide the appropriate standard of care that would not violate his civil rights, pursuant to the Massachusetts and federal constitutions.

97. The Defendants, John Doe and Jane Doe breached their duty when they failed to promptly and reasonably enquire of and aid the Plaintiff for his acute injuries, and instead, initially and predominately consulted with Springfield police officers whose colleagues had perpetrated the attack.

98. The Defendants, John Doe and Jane Doe breached their duty when they failed to provide the Plaintiff with a reasonable standard of emergency care based on his race, assumed economic status, and the fact he had been victimized by Springfield police officers.

99. The Defendants, John Doe and Jane Doe breached their duty when they failed to medically transport the Plaintiff to receive necessary timely medical care for his acute injuries, and instead discouraged his access to that care based on his race, assumed socio-economic status, and victimization by Springfield police officers.

100. The Defendants, John Doe and Jane Doe breached their duty when they failed to advise the Plaintiff about the foreseeable significant medical consequences if he did not receive immediate medical attention based on his race, assumed socio-economic status, and victimization by Springfield police officers.

101. The Defendants, John Doe and Jane Doe breached their duty when they failed to keep standard medical records or suppressed medical records of their interactions with the Plaintiff on April 8, 2015, based on his race, assumed socio-economic status, victimization by Springfield police officers and in furtherance of covering up the assault by the Springfield Police Officers.

102. As a direct and proximate result of the violations by the Defendants, John Doe and Jane Doe, of the Plaintiff's civil rights under the U.S. Constitution and the Massachusetts Declaration of Rights, the Plaintiff suffered serious harm including but not limited to: complications from his severe injuries which included a concussion, a broken leg, a severely dislocated ankle with significant ligamentous and cartilage injury (requiring surgery and insertion of a metal plate and screws), loss of four upper

front teeth, P.T.S.D., loss of employment, lost wages, and permanent impairment of his future earning capacity.

Count VIII

v. AMR, AMR MA, Van Horne, Pelletier, their Employees and Agents
for violations of the Plaintiff's Civil Rights, pursuant to 42 U.S. Code § 1983

103. In responding to the "man down" emergency call on April 8, 2015, where the Plaintiff required emergency medical response in Springfield, MA, the Defendants, AMR, AMR MA, Van Horne, Pelletier, their employees and agents, were acting under color of state action.

104. AMR MA had the sole contract to provide emergency medical response for the public "9-1-1" emergency response system for the City of Springfield. Furthermore, AMR MA collaborated and colluded with the Springfield Police Department on the scene but not limited to delaying treatment and failing to document the Plaintiff's interactions with Jane and John Doe.

105. The Defendants, AMR, AMR MA, Van Horne, Pelletier, and their employees and agents, owed a duty to the Plaintiff to properly hire, train, and supervise its employees and agents in the appropriate standard of care that would not violate his civil rights, pursuant to the Massachusetts and federal constitutions.

106. The Defendants, AMR, AMR MA, Van Horne, Pelletier, and their employees and agents breached these duties when they failed to hire, train, and supervise John Doe and Jane Doe in the appropriate standard of care that would not violate the Plaintiff's civil rights, pursuant to the Massachusetts and federal constitutions.

107. As a direct and proximate result of AMR, AMR MA, Van Horne and Pelletier, their employees and agents' breach, the Plaintiff suffered serious harm including but not limited to: complications from his severe injuries which included a concussion, a broken leg, a severely dislocated ankle with significant ligamentous and cartilage injury (requiring surgery and insertion of a metal plate and screws), loss of four upper front teeth, P.T.S.D., loss of employment, lost wages, and permanent impairment of his future earning capacity.

### Count IX

### v. AMR, AMR MA, Van Horne, Pelletier, their Employees and Agents for violations of the Plaintiff's civil rights, pursuant to M.G. L. c. 12, §11I

108. The Defendants, AMR, AMR MA, Van Horne, Pelletier, their employees and agents, owed a duty to the Plaintiff to provide the appropriate standard of care that would not violate his civil rights, pursuant to the Massachusetts constitutions.

109. The Defendants, John Doe and Jane Doe breached their duty when they failed to promptly and reasonably enquire of and aid the Plaintiff for his acute injuries, and instead, initially and predominately consulted and colluded with Springfield police officers whose colleagues had perpetrated the attack.

110. The Defendants, John Doe and Jane Doe breached their duty when they failed to provide the Plaintiff with a reasonable standard of emergency care based on his race, assumed economic status, and the fact he had been victimized by Springfield police officers.

111. The Defendants, John and Jane Doe, took orders from the Springfield Police Department and delayed treatment to the Plaintiff, thus solidifying their collusion and

Case 3:18-cv-30050-MGM   Document 1   Filed 04/06/18   Page 19 of 20

aligning themselves with the Springfield Police Department in furtherance of violating the Plaintiff's civil rights.

112. The Defendants, John Doe and Jane Doe breached their duty when they failed to medically transport the Plaintiff to receive necessary timely medical care for his acute injuries, and instead discouraged his access to that care based on his race, assumed socio-economic status, and victimization by Springfield police officers.

113. The Defendants, John Doe and Jane Doe breached their duty when they failed to advise the Plaintiff about the foreseeable significant medical consequences if he did not receive immediate medical attention based on his race, assumed socio-economic status, and victimization by Springfield police officers.

114. The Defendants, John Doe and Jane Doe breached their duty when they failed to keep standard medical records or suppressed medical records of their interactions with the Plaintiff on April 8, 2015, based on his race, assumed socio-economic status, victimization by Springfield police officers and in furtherance of covering up the assault by the Springfield Police Officers.

115. As a direct and proximate result of the violations by the Defendants, John Doe and Jane Doe, violated the Plaintiff's civil rights the Massachusetts Declaration of Rights, the Plaintiff suffered serious harm including but not limited to: complications from his severe injuries which included a concussion, a broken leg, a severely dislocated ankle with significant ligamentous and cartilage injury (requiring surgery and insertion of a metal plate and screws), loss of four upper front teeth, P.T.S.D., loss of employment, lost wages, and permanent impairment of his future earning capacity.

## PRAYER FOR RELIEF

WHEREFORE, to redress the injuries proximately and directly caused by the Defendants' conduct as stated in paragraphs 1 – 115 above, the Plaintiff respectfully requests the following relief from this Honorable Court:

a. Award compensatory and punitive damages in an amount to be established at trial;

b. award Plaintiff attorneys' fees;

c. award for reasonable and customary costs, expenses and interest incurred in the pursuit of this action;

d. award such other and further relief as this court deems necessary, fair and appropriate.

## JURY DEMAND

The Plaintiff demands a jury trial on all claims so triable.

Date: April 6, 2018

Respectfully submitted,
The Plaintiff Herman Paul Cumby,
By his attorneys,

/s/ Michelle Cruz
Michelle Cruz, Esq.
Law Offices of Michelle S. Cruz,
35 Center Street, Suite 35
Chicopee, MA 01013
(413) 592-9400
BBO #651081

/s/ Madeline Blanchette
Madeline Blanchette, Esq.
Foster and Blanchette
1242 Main Street, Suite 402
Springfield, MA 01103
(413) 737-1001, ext. 2
BBO #672735