UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HERMAN PAUL CUMBY,<br>    Plaintiff,<br><br>v.<br><br>AMERICAN MEDICAL RESPONSE, INC.,<br>AMERICAN MEDICAL RESPONSE<br>OF MASSACHUSETTS, INC., EDWARD<br>VAN HORNE, DAVID L. PELLETIER,<br>JOHN DOE and JANE DOE<br>EMERGENCY MEDICAL TECHNICIANS,<br>    Defendants. | Civil Action Number 3:18-cv-30050 |

**AMERICAN MEDICAL RESPONSE OF MASSACHUSETTS, INC'S OPPOSITION TO ADVANCE LOCAL MEDIA LLC'S MOTION TO QUASH SUBPOENA AND CROSS-MOTION TO COMPEL**

I.  INTRODUCTION

This dispute has nothing to do with confidential sources, despite the attempts of Advance Local Media LLC ("MassLive") to mischaracterize it that way.  American Medical Response of Massachusetts, Inc. ("AMR of Mass.") agreed that no confidential sources need be revealed. (Ex. 2, 3.)  Instead, this dispute is about the plaintiff's (and his cousins') on-the-record statements to MassLive.  MassLive, in its news articles, has already revealed the source of the statements at issue (i.e., the plaintiff and his cousins).  (Ex. 1, ML 0014.)  The plaintiff's interviews are on-the-record (*id.*) and the plaintiff never requested that any statements be kept confidential (doc. 46, Glaun Aff. ¶¶ 1-9).  Based on the published articles, the statements concerned both the plaintiff's and AMR of Mass.'s conduct immediately following the incident, as well as the plaintiff's injuries.  (Ex. 1, ML 0002, 0004-5, 0007, 0012.)  These issues are the crux of this case.

The documents requested should be produced. The statements are not privileged under the First Amendment or Massachusetts law. *Alharbi v. Theblaze, Inc.*, 199 F. Supp. 3d 334, 348 (D. Mass. 2016); *Ayash v. Dana-Farber Cancer Inst.*, 46 Mass. App. Ct. 384, 388 (1999). The documents sought are proportional to the needs of the case because the plaintiff seeks two million dollars in damages from AMR of Mass. and it is not clear from what little has been disclosed by the plaintiff in response to written discovery or from the publicly available documents what others might have seen or done. As relevant, nonprivileged, and proportional, this information is discoverable. Fed. R. Civ. P. 26(b)(1).

During discussions with MassLive's counsel, AMR of Mass.'s counsel made clear that no confidential sources need be revealed. (Ex. 2, 3.) AMR of Mass. does not (at least at this point) seek MassLive's confidential police sources or police information.

MassLive makes no showing that any of the requested information is confidential in nature. (Doc. 46, Glaun Aff. ¶¶ 1-9.) Instead, both Mr. Glaun and his counsel talk in vague generalities about confidentiality. (E.g., *id.* ¶ 7 ("I sometimes promise individuals . . .")) It is clear from Mr. Glaun's affidavit that the plaintiff and his cousins did not request confidentiality. (*Id.*)

Because the information sought is not confidential, no balancing test is needed. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 715 (1st Cir. 1998) (noting that the circuits are divided on this issue but did not decide whether non-confidential information is afforded protection). The documents should be produced. However, even if a balancing test is applied, the test strongly favors production because the documents sought are either public records[1] or

---

[1] The documents sought are (or will be) public records but are withheld under a temporary exception.

based upon the plaintiff's and his cousins' statements, which were provided without requests for confidentiality.

## II.   FACTS

MassLive interviewed the plaintiff in mid-October 2016, 18 months after the incident. (Ex. 1, ML 0003, 0042-43.)  MassLive separately interviewed, the plaintiff's cousin, Jackie Ligon, who was present during the incident and received treatment from AMR of Massachusetts. (Ex. 1, ML 0004-5; Complaint in 3:18-cv-30053, doc. 1, ¶¶ 120, 128.)  During both interviews, the plaintiff and Mr. Ligon gave a "detailed account" of the incident, including the plaintiff's treatment at the scene, and his alleged damages.  (Ex. 1, ML 0002, 0004-5, 0007, 0012.)  These interviews were on-the-record.  (Ex. 1, ML 0014 ("[The plaintiff] and Ligon's interviews are currently the only *on-record* descriptions of exactly what happened that night.") (emphasis added)).  In fact, much of "the narrative of that night has already been publicly disclosed, both through media interviews with the victims and the DA's report . . . ."  (Ex. 1, ML 0099.) However, the "detailed account" (ex. 1, ML 0012) that both the plaintiff and Jackie Ligon told only to MassLive has not been made public.

MassLive interviewed the plaintiff again on February 2, 2017.  (Ex. 1, ML 0062.)  In about April 2017, MassLive interviewed Jackie Ligon again, this time with the plaintiff's other cousin, Jozelle Ligon, who was also present during the incident.[2]  (Ex. 1, ML 0111.)  On January 10, 2018, MassLive interviewed the plaintiff for a third time, accompanied by his girlfriend, Becky.  (Ex. 1, ML 0114-115, 119-120.)  In that interview, the plaintiff and his girlfriend described the incident and the plaintiff's alleged damages.  (Ex. 1, ML 0119-0122.)

The plaintiff, Jackie Ligon, and Jozelle Ligon were represented by counsel during the MassLive interviews.  In fact, MassLive also interviewed the plaintiff's counsel, Michelle Cruz,

---

[2] Jackie Ligon and Jozelle Ligon are plaintiffs in other cases pending in state in federal court.

3

and the Ligons' counsel, Joe Smith III.  (Ex. 1, ML 0001, 0064-65, 0111.)  The plaintiff, his girlfriend Becky, Jackie Ligon, Jozelle Ligon, and their counsel did not request that any information be kept confidential.[3]  (Doc. 46, Glaun Aff. ¶¶ 1-9.)

Of course, MassLive also appears to have interviewed confidential sources.  (E.g., ex. 1, ML 0131 ("Police sources who spoke privately to a reporter "), ML 0159 ("A police source, who was not authorized to speak publicly about the investigation") ML 0160 ("a source familiar with the ongoing probe . . . who requested anonymity."))  However, AMR of Mass. does not seek this information and made that clear to MassLive's counsel.  (Ex. 2, Letter to counsel, p. 1-2; ex. 3, email exchange, p. 1.)

MassLive also has records from the Springfield Police and possibly from other governmental agencies.  The parties to this case do not have the documents – but not for a lack of trying.  (Ex. 4, public records request; ex. 5, public records response, ex. 6, subpoena to Springfield with response; ex. 7, subpoena to Attorney Smith; ex. 8, Ans Int.)  On August 14, 2018, AMR of Mass.'s counsel sent a public records request to the City of Springfield but only received one heavily redacted copy of a single police report.  (Ex 5, public records response.)  On August 24, 2018, AMR of Mass. served a subpoena upon the City of Springfield but received the same heavily redacted report.  (Ex. 6, subpoena response.)  Springfield will not release documents while the Massachusetts Attorney General's Office is investigating.  (*Id*., p. 1.)  The Springfield City Solicitor did not know when the investigation would conclude.  The Court set discovery to end on April 12, 2019.  (Doc. 32, order.)  Accordingly, the parties cannot wait for the Attorney General's Office to wrap up its investigation.

---

[3] Had any requested confidentiality, it would have been included in Mr. Glaun's affidavit or in the news articles.

4

AMR of Mass. has issued written discovery to the plaintiff. However, the answers to interrogatories did not reveal any more about the incident than what was presented in the complaint. For example, in response to the interrogatory requesting that the plaintiff state the basis for the allegation that AMR of Mass. was negligent, the plaintiff merely stated, following lengthy baseless objections: "See Complaint paragraphs 33-35, 37-63, 66-102." (Ex. 8, Ans. Int. 12.) On November 12, 2018, AMR of Mass. requested that the plaintiff supplement his interrogatory answers, but the plaintiff has not done so. On November 27, 2018, AMR of Mass. subpoenaed non-privileged, non-work product documents from the Ligons' counsel, Attorney Smith. (Ex. 7.) However, Attorney Smith had no responsive documents.

Among the public records that MassLive has in its possession are "four hours of [video] footage," which "is drawn from three interviews: Cumby with his attorney Michelle Cruz on July 9, 2015, and his cousins Jackie and Jozelle Ligon in separate interviews on July 17, 2015." (Ex. 1, ML 0077.) MassLive has posted eight video clips of the police interviews totaling nineteen minutes (of the four hours of footage).[4] MassLive has three hours and forty minutes of police video that it has not made available. MassLive may have other public records but did not disclose which documents it has.

### III.    ARGUMENT

    A.    None of the Information AMR of Mass. is Seeking is Confidential.[5]

AMR of Mass. seeks (1) public records and (2) documents and information from the plaintiff, his cousins, his girlfriend, and their counsel, which relate to the parties' conduct during the incident and the plaintiff's damages.[6] This information is not confidential.

---

[4] www.youtube.com/playlist?list=PLQwU3y8c6bw5ojFh0mR4Ueo_YQ0KdVWi6

[5] Although the subpoena (doc. 45-1) is broad enough to encompass confidential sources and information, the defendant's counsel agreed to modify the scope and is not seeking these documents and information. (Ex. 2, 3.)

[6] The information sought is relevant and MassLive does not make argument to the contrary.

The documents sought will become public. However, Springfield is withholding the public records because it claims they cannot be disclosed while the grand jury is hearing evidence. (Ex. 6, subpoena response.) MassLive makes no claim that the disclosure of the public records would lead to the revelation of a confidential source or confidential information. In fact, MassLive already offered to provide these documents. (Doc. 44, p. 3, n.2.) Accordingly, they are not confidential.

Any information provided freely, on the advice of and in the presence of counsel, by the plaintiff, his cousins, and his girlfriend is not confidential. In fact, MassLive makes no showing whatsoever that any of this information is confidential. (Doc. 46, Glaun Aff. ¶¶ 1-9.) Instead, Mr. Glaun merely states that "it is customary for me to conduct a so-called on the record interview in which a source may designate some pieces of information or other things they say as 'off the record,' or otherwise confidential." (*Id.* ¶ 9.) Tellingly, Mr. Glaun did not indicate that he made any such promise to the plaintiff, the Ligons, or the plaintiff's girlfriend. (*Id.* ¶¶ 1-9.) That is, of course, because the interviews were on the record and not confidential. Accordingly, there is no need for a balancing test. *Cusumano*, 162 F.3d at 715.

Of course, the First Circuit has cautioned that non-confidential information held by journalists should not be "routine[ly] and casually, if not cavalierly, compelled." *Id.* at 715. Here, there is nothing casual or cavalier about the request. The plaintiff and his cousins are plaintiffs in this case and related cases. While represented by counsel, they freely provided the information to MassLive without qualification. The plaintiff's statements to MassLive and the public records are not available from other sources and all are important to the defense of this case. Accordingly, disclosure is proper and neither cavalier nor casual.

6

B.   The Balancing Test, If It Were Applicable, Favors Production.

Even if the information sought were confidential, which it is not, the balancing test favors the disclosure of the information sought here. "When a subpoena seeks divulgement of *confidential* information compiled by a journalist . . . in anticipation of publication, courts must apply a balancing test." *Id.* at 716 (emphasis added). "Initially, the movant must make a prima facie showing that his claim of need and relevance is not frivolous." *Id*. "Upon such a showing, the burden shifts to the objector to demonstrate the basis for withholding the information." *Id*. "The court then must place those factors that relate to the movant's need for the information on one pan of the scales and those that reflect the objector's interest in confidentiality and the potential injury to the free flow of information that disclosure portends on the opposite pan." *Id*.

The information sought is needed because the public records are not available through public sources and the plaintiff's statements to MassLive, which are closer in time to the incident, are likewise not available through other sources. (E.g., ex. 8, Ans. Int. 21-24.) Both the public records and the MassLive interviews are relevant (and critical) to the issues in dispute in this case because they relate to AMR of Mass.'s conduct in the immediate aftermath of the incident, the plaintiff's conduct following the incident, and the plaintiff's damages.

The City of Springfield will not release the public records. At this time, there is no other way to get the necessary information.[7]   Unlike his statements to MassLive, the plaintiff did not provide a "detailed account" (ex. 1, ML 0012) in his answers to interrogatories (ex. 8, Ans. Int. 21-24.)

AMR of Mass. is not seeking any confidential information from the Springfield Police sources (or other confidential sources). (Ex. 2, 3.) Instead, AMR of Mass. seeks documents

---

[7] This point favors production but is not required as "the Supreme Court twice rejected any automatic requirement that non-confidential sources be exhausted." *In re Special Proceedings*, 373 F.3d 37, 45 (1st Cir. 2004).

related to MassLive's interviews of the plaintiff and his cousins.  The plaintiff and his cousins did not request that any information remain confidential and made their statements on the advice of counsel.  The plaintiff has put the statements at issue by bringing this lawsuit.  Accordingly, the documents should be produced.

The facts favoring suppression of the information are weak.  MassLive, in its motion to quash, focuses on revealing confidential sources but AMR of Mass. is not seeking the identity of confidential sources or information from the confidential sources.  (Ex. 2, 3.)  Moreover, MassLive is concerned that this could open the floodgates to subpoenas from lazy litigants. MassLive's concern that parties would regularly subpoena journalists to acquire public records is illogical.  (Doc. 44, p. 4.)  This is an unusual case where a public agency refuses to produce public records before the discovery deadline and a reporter has obtained a copy of the records that the government agency refuses to disclose.  Only in these rare circumstances would a litigant consider such a course of action.

The MassLive interview-related documents should be disclosed because this appears to be an unusual situation and MassLive has made no showing that it is common.  (Doc. 46, Glaun Aff. ¶¶ 1-9.)   Here, the plaintiff and his cousins (plaintiffs in related civil actions), knowing litigation was likely, took the seemingly uncommon approach to make statements to a reporter without requesting confidentiality.  Accordingly, it is hyperbolic to suggest that production of documents in similar circumstances would "overwhelm[]" the media.  (Doc. 44, p. 4.)

After weighing the factors, the scales tip in favor of producing the documents and disclosing the non-confidential information.

IV.     CONCLUSION

For the reasons set forth herein, MassLive's motion to quash should be denied and the Court should enter an order compelling MassLive to produce (1) the public records and (2)

documents related to the interviews of the plaintiff, Jackie Ligon, Jozelle Ligon, the plaintiff's girlfriend, and their counsel.  The Court should also order that Dan Glaun appear for a deposition, at a time convenient to all parties, to answer questions other than those that would reveal confidential sources.

                                          Respectfully submitted,

                                          AMERICAN MEDICAL RESPONSE OF
                                          MASSACHUSETTS, INC.,
                                          By its attorneys,

                                          /s/ Andrew D. Black
                                          Barbara Hayes Buell (BBO No. 063480)
                                          Andrew D. Black (BBO No. 669839)
                                          Smith Duggan Buell & Rufo LLP
                                          55 Old Bedford Road
                                          Lincoln, MA 01773
                                          (617) 228-4400
                                          Barbara.Buell@SmithDuggan.com
                                          Andrew.Black@SmithDuggan.com

Dated:  December 18, 2018

## CERTIFICATE OF SERVICE

      I hereby certify that, on this 18th day of December 2018, I electronically filed the foregoing document through the CM/ECF system, which will send notification to the registered participants as identified on the Notice of Electronic Filing, and, on this day, I will cause a copy to be mailed to each of those indicated as non-registered participants.

Madeline Blanchette, Esq.  
Foster and Blanchette  
1242 Main Street, Suite 402  
Springfield, MA 01103  
*Counsel for plaintiff*

Michelle Cruz, Esq.  
Law Offices of Michelle S. Cruz  
35 Center Street, Suite 35  
Chicopee, MA 01013  
*Counsel for plaintiff*

Jeffrey E. Poindexter, Esq.  
Elizabeth S. Zuckerman, Esq.  
Bulkley, Richardson and Gelinas, LLP  
1500 Main Street, Suite 2700  
Springfield, MA 01115-5507  
*Counsel for Dan Glaun and*  
*Advance Local Media, LLC*

                                          /s/ Andrew D. Black