UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HERMAN PAUL CUMBY, | * |
| Plaintiff, | * |
| v. | * |
| | * Civil Action No. 18-30050-MGM |
| AMERICAN MEDICAL RESPONSE, INC., AMERICAN MEDICAL RESPONSE OF MASSACHUSETTS, INC., EDWARD VAN HORNE, DAVID PELLETIER, JOHN DOE and JANE DOE EMERGENCY MEDICAL TECHNICIANS, | * |
| Defendants. | * |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 26)

October 31, 2019

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Herman Paul Cumby ("Plaintiff") brings this action against American Medical Response, Inc. ("AMR"), American Medical Response of Massachusetts, Inc. ("AMR MA"), Edward Van Horne, David Pelletier, John Doe, and Jane Doe (collectively, "Defendants"). Plaintiff's claims arise out of an incident during which he was allegedly assaulted by off-duty Springfield police officers. The present suit relates to the acts and omissions of medical personnel who arrived on site after the assault. Plaintiff alleges the two unnamed EMTs, John Doe and Jane Doe, provided inadequate care or functionally no medical care to Plaintiff. He also alleges Van Horne, the president of AMR and AMR MA, as well as Pelletier, the general manager of AMR MA, and the corporations themselves are liable due to their failure to adequately train their employees.

Plaintiff asserts the following claims in his complaint: negligence against both EMTs (Count I), negligent infliction of emotional distress against both EMTs (Count II); intentional infliction of emotional distress against both EMTs (Count III); negligence against AMR, AMR MA, Van Horne, Pelletier, and their employees and agents (Count IV); negligent infliction of emotional distress against AMR, AMR MA, Van Horne, Pelletier, and their employees and agents (Count V); intentional infliction of emotional distress against AMR, AMR MA, Van Horne, Pelletier, and their employees and agents Count VI); violation of his civil rights under 42 U.S.C. § 1983 against both EMTs (Count VII); violation of his civil rights under 42 U.S.C. § 1983 against AMR, AMR MA, Van Horne, Pelletier, and their employees and agents (Count VIII); and violation of his civil rights under Mass. Gen. Laws ch. 12, § 11I against AMR, AMR MA, Van Horne, Pelletier, and their employees and agents (Count IX).

Presently before the court is Defendants' motion to dismiss, in which they assert (1) this court lacks personal jurisdiction over AMR and Van Horne, and (2) the various counts fail to state a claim as a matter of law, except for the negligence claims in Counts IV and V against AMR MA, which Defendants do not dispute have been sufficiently pled. For the following reasons, the court will dismiss Plaintiff's section 1983 claims and decline to exercise supplemental jurisdiction over the remaining state-law claims.

II. BACKGROUND

The following facts come directly from Plaintiff's complaint. On the night of April 7, 2015, at approximately 11:00 p.m., Plaintiff (who is "African American"), along with his two cousins, Jozelle and Jackie Ligon, and one friend, Michael Cintron, went to Nathan Bill's EFP Bar and Restaurant ("Nathan Bill's") at 110 Island Pond Road in Springfield, Massachusetts. (Dkt. No. 1, Comp. ¶¶ 2, 20.) Plaintiff was the group's designated driver, and he consumed approximately two drinks over the course of the evening. (*Id.* ¶ 21.) Several off-duty Springfield police officers,

2

including Daniel Billingsley, Melissa Rodriguez, Anthony Cicero, Christian Cicero, and Igor Basovskiy, were also at Nathan Bill's and were drinking alcohol. (*Id.* ¶ 22.) At approximately 1:00 a.m. on April 8, 2015, Plaintiff's cousin Jozelle Ligon whistled to get the bartender's attention and Officer Billingsley misinterpreted the sound as a catcall to his then-girlfriend Officer Rodriguez. (*Id.* ¶ 23.) When Officer Billingsley and two other off-duty officers followed Ligon outside the bar, Plaintiff and John Sullivan, Nathan Bill's bar manager, followed as well. (*Id.* ¶¶ 24-25.) Plaintiff, his group, and Sullivan were unable to peacefully resolve the conflict with Officer Billingsley, so Plaintiff's group left the bar on foot and split up. (*Id.* ¶¶ 24-26.)

Plaintiff was returning to Nathan Bill's just before 2:00 a.m. for his car when he saw his cousins and Cintron near Murphy's Pop Shop and the off-duty officers from the bar approaching them. (*Id.* ¶¶ 27-28.) Plaintiff heard a whistle, then Officer Billingsley said, "What's up now?" and pushed one of Plaintiff's cousins. (*Id.* ¶¶ 29-30.) Plaintiff asked, "What are you doing this for? We didn't come for this." (*Id.* ¶ 30.) After turning away from the group, Plaintiff was struck from behind and knocked unconscious. (*Id.* ¶ 31.)

On-duty Springfield officers arrived at 2:04 a.m., and the Springfield dispatcher called AMR MA at 2:06 a.m. due to a "man down on the ground." (*Id.* ¶ 32.) The AMR MA ambulance arrived at 2:11:27 a.m. but exited the parking lot, by this time full of Springfield police officers, at 2:12:27 a.m. without having attended to Plaintiff, who was still lying on the ground unconscious. (*Id.* ¶ 33.) The ambulance returned sometime thereafter and parked near Plaintiff but still did not assist him. (*Id.* ¶ 34.) Plaintiff regained consciousness and saw uniformed police officers Darren Nguyen and Shavonne Lewis speaking with the EMTs. (*Id.* ¶ 35.) He could also see the off-duty officers from Nathan Bill's walking away. (*Id.* ¶ 36.) The EMTs still did not come to assist Plaintiff, so Cintron helped him stand. (*Id.* ¶ 37.) Plaintiff felt severe pain because his leg was injured and could not bear his weight. (*Id.* ¶ 38.) Cintron helped Plaintiff approach the John Doe EMT, who asked whether

3

Plaintiff needed assistance. (*Id.* ¶ 40.) Plaintiff said he didn't know and the EMT replied, "you look like crap." (*Id.* ¶ 41.) After Plaintiff explained he had been beaten, hit on the head, and knocked unconscious, this EMT briefly looked at Plaintiff's injuries, which included a bloody mouth and blood running down his head. (*Id.* ¶¶ 42-43.) John Doe did not ask how long Plaintiff was unconscious or inquire about any pain, dizziness, or ringing in his ears. (*Id.* ¶ 43). Nor did he perform basic tests to assess whether Plaintiff had a concussion, such as checking pupils and vital signs or taking any pictures or notes of Plaintiff's injuries. (*Id.* ¶¶ 44-45.) John Doe rotated Plaintiff's ankle, causing Plaintiff to wince in pain and say "it hurts like hell." (*Id.* ¶ 46.) John Doe then asked whether Plaintiff could wiggle his toes, which Plaintiff confirmed he could. (*Id.* ¶ 47.) Without asking whether Plaintiff's leg could bear weight or whether Plaintiff could walk, John Doe stated "I think you sprained your ankle." (*Id.* at ¶¶ 47-48.)

John Doe did not splint Plaintiff's leg or ankle or offer ice for the injuries. (*Id.* ¶¶ 49-50.) Though Plaintiff said his front teeth felt loose, John Doe told him he "should be fine" without checking the teeth or telling Plaintiff to seek medical treatment. (*Id.* ¶¶ 51-52.) John Doe asked Plaintiff if he wanted to go to the hospital, but without asking about Plaintiff's financial situation or health insurance warned that "an ambulance trip would be expensive." (*Id.* ¶¶ 53-54.) Plaintiff asked whether he should go to the hospital and John Doe answered, "I think you had too much to drink and should go home and sleep it off." (*Id.* ¶ 55.) John Doe did not tell Plaintiff about the risks of not going to the hospital for treatment or how to treat his injuries at home or avoid worsening them. (*Id.* ¶¶ 57-58.)

Based on advice from John Doe and Jane Doe, Plaintiff drove his car alone to his cousin's house and did not receive timely, critical medical attention. (*Id.* ¶¶ 60-61.) Instead, he drove and walked around on a broken leg and dislocated ankle, tried to sleep with a concussion, and did not get treatment in time to save his loosened front teeth. (*Id.* ¶ 62.) At his cousin's house, Plaintiff felt

dizzy and nauseous from pain and his concussion and vomited and fainted twice. (*Id.* ¶ 63.) Later that day, he went to the emergency room at Baystate Medical Center and was diagnosed with "assault with head injury, loose teeth with impaction fracture and a complex fibular fracture with severe ankle sprain." (*Id.* ¶ 64.) Plaintiff alleges that "as a direct and proximate cause of AMR MA's employees and/or agents John Doe and Jane Doe's negligence," Plaintiff suffered complications from his injuries, including a concussion, a broken leg, a dislocated ankle requiring surgery, the loss of four teeth, P.T.S.D., emotional distress, loss of employment, lost wages, and permanent impairment of future earning capacity. (*Id.* ¶ 65.)

### III. PROCEDURAL HISTORY

After Defendants filed the motion to dismiss, this court issued an Order to Show Cause. (Dkt. No. 67.) The court first explained that, contrary to Plaintiff's assertion in his complaint, this court lacks diversity jurisdiction under 28 U.S.C. § 1332 because there is not complete diversity of citizenship. (*Id.* at 1-2.)[1] Next, as to the section 1983 claims which form the basis for federal question jurisdiction under 28 U.S.C. § 1331, the court explained that it must determine whether Plaintiff sufficiently pled a deprivation of a federally secured right. (*Id.* at 2 (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979); and *Frances-Colon v. Ramirez*, 107 F.3d 62, 64 (1st Cir. 1997)).) The court also explained, however, that while Defendants articulated this deprivation requirement in their motion to dismiss, they proceeded to focus on whether the EMTs acted under "color of law." (*Id.*) Therefore, because Defendants did not adequately develop an argument regarding the deprivation requirement and because the court's subject-matter jurisdiction depended on the sufficiency of the

---

[1] Specifically, Plaintiff's complaint alleges that Plaintiff, AMR MA, and David Pelletier are all Massachusetts citizens. (Compl. ¶¶ 2, 4, 8.) Thus, because "diversity jurisdiction does not exist where any plaintiff is a citizen of the same state as any defendant," *Alvarez-Torres v. Ryder Mem'l Hosp., Inc.*, 582 F.3d 47, 54 (1st Cir. 2009), this court's subject-matter jurisdiction cannot be based on diversity jurisdiction under 28 U.S.C. § 1332.

section 1983 claims,[2] the court deemed it appropriate to provide Plaintiff with an opportunity to address the issue and ordered Plaintiff to file a memorandum explaining how Counts VII and VIII plausibly demonstrate a deprivation of his federally secured rights. (*Id.* at 2-3 (citing *Wyatt v. City of Boston*, 35 F.3d 13, 14-15 (1st Cir. 1994)).) Plaintiff filed his response to the court's order on September 10, 2019. (Dkt. No. 75.) Defendants filed a memorandum addressing this issue as well on the same date. (Dkt. No. 76.)

IV. PERSONAL JURISDICTION

In their motion to dismiss, Defendants assert this court lacks personal jurisdiction over AMR and Van Horne (but not the other Defendants) and Plaintiff's complaint fails to state a claim upon which relief may be granted (with the exception of the negligence claims in Count IV and V against AMR MA). Normally, this court would address the personal jurisdiction challenges before assessing the adequacy of the complaint. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007).

> However, in cases such as this one with multiple defendants—over some of whom the court indisputably has personal jurisdiction—in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, [the court] may address first the facial challenge to the underlying cause of action and, if [it] dismiss[es] the claim in its entirety, decline to address the personal jurisdiction claims made by some defendants.

*Chevron Corp. v. Naranjo*, 667 F.3d 232, 247 n.17 (2d Cir. 2012); *see also ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013). As the Second Circuit explained in *Chevron*, "[t]his approach does not violate the Supreme Court's repudiation of the so-called 'hypothetical jurisdiction' doctrine, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998), as [the court's] analysis is based on the undisputed personal jurisdiction of the other defendants." *Chevron Corp.*, 667

---

[2] The court stated that if it dismisses Counts VII and VIII—the foundational federal claims upon which subject-matter jurisdiction must be based—"then it will decline to exercise supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367." (*Id.* (citing *Rossi v. Gemman*, 489 F.3d 26, 39 (1st Cir. 2007).)

F.3d at 247 n.17. Moreover, the First Circuit has explained that when "the affected defendant does not insist that the jurisdictional issue be determined first," as is the case here, the district court may avoid the personal jurisdiction argument "in favor of ordering dismissal on the merits." *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 40 (1st Cir. 1991). The court believes this approach is especially appropriate in this case where, for the reasons explained below, it dismisses the foundational federal claims and declines to exercise supplemental jurisdiction over the remaining state-law claims. Accordingly, the court will not address AMR and Van Horne's personal jurisdiction challenge and expresses no view on that issue.

## V. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of the factual allegations contained in the complaint, the court must be careful to credit the factual assertions made by the plaintiff while disregarding "legal conclusions," such as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## VI. ANALYSIS

As mentioned, the court's subject-matter jurisdiction is based on Plaintiff's claims under 42 U.S.C. § 1983. That statute states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . .

7

>to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140); *see also Vélez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 151-52 (1st Cir. 2006) ("In order to establish liability under § 1983, plaintiffs 'must show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States.'" (quoting *Johnson v. Mahoney*, 424 F.3d 83, 89 (1st Cir. 2005))); *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) ("[I]t is the plaintiff's burden to identify the specific constitutional right infringed.").

In response to the Order to Show Cause, Plaintiff appears to premise his section 1983 claims on three theories: (1) Defendants violated Plaintiff's 4th Amendment and/or 14th Amendment rights based on the police assault and a subsequent cover-up by the EMTs; (2) Defendants violated Plaintiff's 14th Amendment Equal Protection rights by discriminating against him in failing to provide medical care on the basis of race; and (3) Defendants violated Plaintiff's right to equal access to health care under Massachusetts law. The court will address each theory in turn.

A.     <u>Police Assault and Cover-up</u>

Plaintiff asserts "John Doe and Jane Doe EMTs violated his Fourth and Fourteenth Amendment Rights by colluding with Springfield police to cover up their unprovoked racial attack on the Plaintiff by denying him medical care, failing to transport to a medical facility, and failing to

keep and maintain medical record of his injuries." (Dkt. No. 75 at 5.)[3] As an initial matter, the EMTs are not liable for Plaintiff's initial encounter with the off-duty Springfield police officers. "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable.'" *Vélez-Rivera*, 437 F.3d at 156 (quoting *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005)); *see also Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980) (rejecting the plaintiff's theory that individuals who conspired to cover up the excessive use of force of another officer, but did not participate in the excessive force, were liable for the original excessive use of force); *Correia v. Town of Framingham*, 2013 WL 4499345, at *2 (D. Mass. July 24, 2013). Here, the complaint makes clear that the EMTs did not arrive on the scene until after the assault which left Plaintiff injured. Therefore, to the extent Plaintiff seeks to hold the EMTs liable for any Fourth Amendment violation committed by the police, his theory fails.

As to Plaintiff's cover-up theory, the court does believe the complaint alleges sufficient facts to support the inference of a cover-up by the EMTs in favor of the off-duty officers.[4] However, in order for the cover-up to rise to the level of a constitutional violation, the case law in this circuit makes clear that Plaintiff must allege the cover-up prevented him from seeking redress in court

---

[3] The court notes that, despite claiming the encounter with the off-duty police was a "racial attack" in Plaintiff's brief responding to the Order to Show Cause (Dkt. No. 75 at 5), Plaintiff's complaint fails to allege there were any racial overtones in either the fight with those officers or the events leading to the fight. Instead, as alleged in the complaint, the fight seemingly arose from an alcohol-induced miscommunication over a whistle at the bar.

[4] For this reason, the court notes—although unnecessary to the court's analysis—that Plaintiff appears to have adequately alleged state action for purposes of § 1983 under the "state compulsion test," in that one can infer the EMTs acted at the behest of the Springfield police in failing to approach Plaintiff or provide adequate medical care. *See Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5 (1st Cir. 2005) (explaining that "[u]nder the state compulsion test, a private party is fairly characterized as a state actor [for purposes of § 1983] when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State." (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982))). However, state action alone is insufficient to establish liability under § 1983; Plaintiff still must demonstrate a deprivation of a federally secured right. *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (rejecting the plaintiff's argument "that the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to him a right to be free of injury whenever the State may be characterized as the tortfeasor," as "such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States"); *see also Baril v. Town of Uxbridge*, 2013 WL 628664, at *3 (D. Mass. Feb. 19, 2013) ("Section 1983 is not a vehicle for 'imposing liability whenever someone cloaked with state authority causes harm, nor does it guarantee due care by government officials.'" (quoting *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005))).

against the original wrongdoers or somehow rendered his relief against them ineffective. *See Landrigan*, 628 F.2d at 742; *Correia*, 2013 WL 4499345, at *3 (collecting cases which "require allegations that the cover-up prevented the plaintiffs from seeking redress in court, deprived them of damages they otherwise would have received, or otherwise rendered ineffective the remedies available via court action, before a § 1983 claim arising from the cover up will lie"); *Gonsalves v. City of New Bedford*, 939 F. Supp. 921, 925-27 (D. Mass. 1996); *see also Readus v. Barroso*, 2015 WL 9582989, at *2 (N.D. Ill. Dec. 31, 2015) (dismissing § 1983 claim against EMTs for conspiring to cover up excessive force of arresting police officers, because "Plaintiff has a pending lawsuit against the arresting officers"). Here, the court takes judicial notice that Plaintiff separately sued the City of Springfield and various individual police officers for the underlying assault, resulting in a favorable settlement. *See Cumby v. City of Springfield et al.*, 18-cv-30049-MGM, Dkt. No. 40. Moreover, Plaintiff has not alleged in this action that the settlement was inadequate or that Plaintiff was "meaningfully delayed" in filing the underlying suit against the City of Springfield due to the alleged cover-up. *See Correia*, 2013 WL 4499345, at *3. Accordingly, based on the circuit authority cited above, the court rejects Plaintiff's cover-up theory as a basis for § 1983 liability.

B.    Equal Protection

Plaintiff next asserts that the EMTs engaged in racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. In his complaint, Plaintiff does allege, at various points, that the EMTs' conduct was motivated by Plaintiff's race. (Compl. ¶¶ 98-101, 110-114.) As Defendants argue, however, the complaint's allegations are insufficient to support an Equal Protection racial discrimination claim.

The court first notes that the Supreme Court in *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989), held "the Due Process Clause does not require the State to provide its citizens with particular protective services." *Id.* at 196; *see also Jackson v. Schultz*, 429 F.3d 586, 590

(6th Cir. 2005) ("It is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need."); *Brown v. Commonwealth of Pennsylvania, Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003) ("[T]here is no federal constitutional right to rescue services, competent or otherwise."). However, as *DeShaney* also makes clear, if the government does provide such services, it cannot "selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." *DeShaney*, 489 U.S. at 197 n.3.

"To prevail on a claim of racial discrimination in violation of the Equal Protection Clause, a plaintiff must establish (1) that he was selected for adverse treatment compared with others similarly situated, and (2) that the selection for adverse treatment was based on his race." *Rios-Colon v. Toledo-Davila*, 641 F.3d 1, 4 (1st Cir. 2011). At the motion to dismiss stage, "in order to 'provide fair notice to the defendants and state . . . facially plausible legal claim[s],'" a plaintiff must "identify his putative comparators." *Harron v. Town of Franklin*, 660 F.3d 531, 537 (1st Cir. 2011) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2012)). Moreover, as to the second prong, "[t]o survive a motion to dismiss, an equal protection claim must outline facts sufficient to convey specific instances of unlawful discrimination." *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992) (internal quotation marks omitted). "A plaintiff may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." *Id.* (internal quotation marks omitted). "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part because of, not merely in spite of its adverse effects upon an identifiable group." *Id.* at 445 (internal quotation marks omitted); *see also Melendez-Garcia v. Sanchez*, 629 F.3d 25, 38 (1st Cir. 2010).

The court concludes Plaintiff's complaint falls short under both Equal Protection prongs. First, Plaintiff has not identified any "putative comparators." *Harron*, 660 F.3d at 537. "[T]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001) (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989)). However, as was true in *Lu v. Smith*, 2016 WL 4595206, at *3 (D. Mass. Sept. 2, 2016), Plaintiff "has provided no allegations that he was treated differently from others similarly situated, and his . . . complaint does not make mention of the treatment of others."

Second, although Plaintiff alleges the EMTs' actions were "based on [Plaintiff's] race," (Compl. ¶¶ 98-101, 110-114), such allegations, standing along, are conclusory and not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 678-81. Moreover, Plaintiff's non-conclusory factual allegations fail to "nudge[] [his] claim[]" of racially discriminatory intent "across the line from conceivable to plausible," for purposes of surviving a motion to dismiss. *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570). In particular, Plaintiff alleges that "John Doe . . . asked Plaintiff if he wanted to go to the hospital, but discouraged him, saying 'An ambulance trip would be expensive.'" (Compl. ¶ 53.) Plaintiff appears to contend this statement plausibly demonstrates racial prejudice, in that John Doe purportedly assumed Plaintiff, an African American, lacked health insurance or the financial means to afford ambulance transportation. However, "[a]s between [the] 'obvious alternative explanation' for" this statement—that John Doe simply wanted to warn Plaintiff of the potential cost of an ambulance ride, unrelated to any racial stereotypes—"and the purposeful, invidious discrimination [Plaintiff] asks [the court] to infer, discrimination is not a plausible conclusion." *Id.* at 682 (quoting *Twombly*, 550 U.S. at 567). There are no factual allegations, for example, that the EMTs used racially-tinged language or acted any differently than if Plaintiff had been a white individual in

12

the same exact situation.[5] *Cf. Rios-Colon*, 641 F.3d at 5 (complaint "allege[d] that Cordero, the supervisor who caused [the plaintiff] to be transferred and who recommended a less qualified white candidate in preference to [the plaintiff] when a position in the Drug Prevention Division later became available, had used abusive and derogatory slurs expressing explicit anti-black racial bias"). Accordingly, "where," as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of" racial discrimination, "the complaint has alleged—but has not 'show[n]'— 'that the pleader is entitled to relief,'" and the claim is subject to dismissal. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

C. <u>Equal Access to Healthcare</u>

Lastly, Plaintiff asserts the EMTs violated his right to equal access to healthcare. In support of this alleged right, Plaintiff relies on Mass. Gen. Laws ch. 272, §§ 92A and 98, which prohibit racial discrimination in relation to places of public accommodation (including "hospital[s], dispensar[ies] or clinic[s]"), as well as 105 C.R.M. 170.335, a Massachusetts regulation which prohibits racial discrimination "in any aspect of the provision of ambulance or EMS first response service or in employment practices." As an initial matter, however, section 1983 claims must be based on violations of *federally* secured rights, not rights created by state law. *See Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1995) ("It is established beyond peradventure that a state actor's failure to observe a duty imposed by state law, standing alone, is not a sufficient foundation on which to erect a section 1983 claim."). In any event, as discussed above, the complaint fails to adequately allege racial discrimination.[6]

---

[5] The court recognizes, as explained above, that the complaint raises a plausible inference of the EMTs treating Plaintiff worse on account of the involvement of off-duty Springfield police officers. However, there are no allegations from which the court can infer this negative treatment also was motivated by Plaintiff's race. That is, from the non-conclusory facts alleged, the court cannot infer white individuals (or members of other racial or ethnic groups) involved in this encounter with off-duty police would have been treated any differently by the EMTs.

[6] The court also notes, as Defendants argue, that the EMTs did not explicitly deprive Plaintiff of any purported right to healthcare. Rather, as alleged in the complaint, John Doe discouraged Plaintiff from riding in the ambulance. *See, e.g.,*

In the end, the allegations of the EMTs not being responsive to serious bodily injuries caused by off-duty police officers are troubling, but Plaintiff's claims sound in state tort law, not federal constitutional violations. *See Baker*, 443 U.S. at 144 ("Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution."). Because "[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law," *id.* at 146, the court dismisses the section 1983 claims.[7] Moreover, because the court dismisses these foundational federal claims, it declines to exercise supplemental jurisdiction over the remaining state-law claims, which may be refiled in state court. *See Rossi*, 489 F.3d at 39 ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims." (quoting *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995)).

## VII. CONCLUSION

For these reasons, the court ALLOWS, in part, Defendants' Motion to Dismiss (Dkt. No. 26), to the extent it seeks dismissal of Counts VII and VIII. In addition, the court declines to exercise supplemental jurisdiction over the remaining state-law claims and dismisses those claims without prejudice. This case may now be closed.

It is So Ordered.

/s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge

---

*Macko v. Byron*, 576 F. Supp. 875, 880 (N.D. Ohio 1983) ("A cause of action will not lie, under § 1983, merely because a person was discouraged from exercising his constitutional right. To be actionable, there must be actual deprivation of a constitutional right."), *aff'd*, 760 F.2d 95 (6th Cir. 1985).

[7] In addition to Count VII, the section 1983 claims against John Doe and Jane Doe EMTs, the court also dismisses Count VIII, which asserts section 1983 claims against AMR, AMR MA, Van Horne, Pelletier, and their employees and agents, because those claims are predicated on the alleged constitutional violations of the EMTs.